# EXHIBIT A

| CIRCUIT COURT SUMMONS | NASHVILLE, TENNESSEE |

**STATE OF TENNESSEE**
**DAVIDSON COUNTY**
**20TH JUDICIAL DISTRICT**

☒ First
☐ Alias
☐ Pluries

CIVIL ACTION
DOCKET NO. 18C-1004

ASBIEL BENITEZ, YOUSSEF WAHID, ARNOBIO GOMEZ,

OMAR ABDULQADER, and LABINOT KOLSHI,
Plaintiffs

**Method of Service:**

☐ Davidson County Sheriff
☒ Out of County Sheriff - KNOX
☐ Secretary of State
☐ Certified Mail
☐ Personal Service
☐ Commissioner of Insurance

**Vs.**

TYSON FOODS, INC.

Defendant

To the above-named Defendant: TYSON FOODS, INC. to be served through registered agent CT CORPORATION SYSTEM, 800 SOUTH GAY STREET, SUITE 2021, KNOXVILLE, TN 37292-9710.

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.
In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 04.20.18

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

ATTORNEY FOR PLAINTIFF
or

PLAINTIFF'S ADDRESS

Michael Ponce and Associates

1000 Jackson Road, Ste. 225
Address
Goodlettsville, TN 37072 (615) 851-1776

) THE SHERIFF:
Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

:ceived this summons for service this _____ day of _____, 20____.

_____
**SHERIFF**

If you have a disability and require assistance, please contact 862-5204.

Copy
240447

IN THE CIRCUIT COURT OF DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

FILED
2018 APR 20 AM 11: 39

| | |
|---|---|
| ASBIEL BENITEZ, YOUSSEF WAHID, OMAR ABDULQADER, ARNOBIO GOMEZ and LABINOT KOLSHI, <br><br> Plaintiffs, <br><br> v. <br><br> TYSON FOODS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CASE NO. 18C-1004

JURY DEMAND

## COMPLAINT

Come now the Plaintiffs, Asbiel Benitez, Youssef Wahid, Omar Abdulqader, Arnobio Gomez and Labinot Kolshi, by and through their undersigned counsel, and for their Complaint against the Defendant, Tyson Foods, Inc., the Plaintiffs state as follows:

1.    Plaintiff Asbiel Benitez (hereinafter "Plaintiff Benitez") is a resident of White House, Robertson County, Tennessee.

2.    Plaintiff Youssef Wahid (hereinafter "Plaintiff Wahid") is a resident of Tallahassee, Leon County, Florida.

3.    Plaintiff Omar Abdulqader (hereinafter "Plaintiff Abdulqader") is a resident of Antioch, Davidson County, Tennessee.

4.    Plaintiff Arnobio Gomez (hereinafter "Plaintiff Gomez") is a resident of Tallahassee, Leon County, Florida.

5.    Plaintiff Labinot Kolshi (hereinafter "Plaintiff Kolshi") is a resident of



Tallahassee, Leon County, Florida.

6. Defendant, Tyson Foods, Inc., (hereinafter "Defendant") is a foreign limited liability company authorized to be and doing business in Goodlettsville, Davidson County, Tennessee, where the allegations set forth in this complaint occurred, and may be served through its registered agent for service of process, CT Corporation System located at 800 South Gay Street, Suite 2021, Knoxville, TN 37929-9710.

7. Jurisdiction in this matter is proper because the events giving rise to this matter took place in Davidson County, Tennessee.

8. The Plaintiffs were hired by the Defendant and worked there for varying durations.

## FACTUAL BACKGROUND

### A. Asbiel Benitez

9. Plaintiff Benitez was hired by the Defendant on or around May 6, 2008.

10. Plaintiff Benitez is a Hispanic male born in Cuba.

11. On or around May of 2017, Plaintiff Benitez was a General Manager at the Goodlettsville plant. He had held this position for some time and received positive evaluations and feedback.

12. Since the beginning of Plaintiff Benitez's employment, he performed his job to the best of his ability and consistent with the Defendant's requirements and expectations.

13. Upon the appointment of Doug Griffin as Plant Manager of the Goodlettsville Plant, Plaintiff Benitez and other non-Caucasian, foreign-born employees endured harassment and discrimination based upon their race and national origin.

Copy

14. Plaintiff Benitez also witnessed other employees who experienced discrimination and harassment due to their color, age, and religion and opposed this practice.

15. Disparate comments were made regarding Plaintiff Benitez's race and national origin. For example, Doug Griffin frequently made comments about his work ethic in reference to his nationality and his accent.

16. Non-Caucasian, foreign-born employees were treated less favorably than Caucasian, American-born employees; for example, Plaintiff Benitez applied for open positions in departments with better hours but was denied, and these positions were given to Caucasian, American-born employees.

17. Doug Griffin dumped trash on Plaintiff Benitez's workspace and the workspace of Plaintiff Omar Abdulqader but not Caucasian, American-born employees who had work stations in the same area.

18. Plaintiff Benitez reported the comments and treatment to the Human Resources Complex Manager, Crystal Dyer, but Ms. Dyer refused to take any action to remedy the harassment and discrimination.

19. In or around May 2017, Plaintiff Benitez was forced to come into work during his pre-approved scheduled vacation because the Vice President was visiting the Goodlettsville plant.

20. During this visit, Plaintiff Benitez revealed to the Vice President the treatment he and other non-Caucasian, foreign-born employees endured under the behest of Plant Manager Doug Griffin, Human Resources Complex Manager Crystal Dyer, and other Caucasian-American employees. After the Vice President's visit, Plaintiff Benitez



resumed his vacation.

21.     The harassment and disparate treatment toward Plaintiff Benitez from management increased after he reported the treatment to the Vice President.

22.     On or around June 20, 2017, Plaintiff Benitez was demoted from the general manager position to a supervisor position by Mr. Griffin allegedly for inferior quality product that was produced during his shift.

23.     Caucasian-American-born general managers who produced inferior product were not demoted in this manner. In some instances, Caucasian, American-born employees were not even reprimanded for product errors.

24.     Despite performing the new position to the best of his ability and maintaining the Defendant's goals and standards, Plaintiff Benitez continues to endure increased scrutiny which often undermines the chain of command. He is still being harassed and discriminated against by management within the Goodlettsville plant.

25.     Additionally, Plaintiff Benitez reported this race and national origin discrimination to an outside agency, the Equal Employment Opportunity Commission and the Tennessee Human Rights Commission, and was subjected to even further retaliation, including threats of discipline and intimidation tactics to try and dissuade Plaintiff Benitez from pursuing remedies to stop this discrimination and harassment.

26.     Plaintiff Benitez submits that the proffered reason for his demotion occurring on or around June 20, 2017 is merely pre-textual and that the true motive for his demotion was illegal and improper.

**B. Youssef Wahid**

27.     Plaintiff Wahid was hired by the Defendant on or around December 16,



2003.

28.     Plaintiff Wahid was originally born in the Republic of Morocco.

29.     Plaintiff Wahid is a practicing Muslim.

30.     Plaintiff Wahid is an Arabic male.

31.     At all times relevant, Plaintiff Wahid was a General Lead Supervisor at the Goodlettsville plant.

32.     Since the beginning of Plaintiff Wahid's employment, he performed his job to the best of his ability and consistent with the Defendant's requirements and expectations.

33.     Plaintiff Wahid filed a Charge of Discrimination in 2011 with the Equal Employment Opportunity Commission, alleging discrimination based upon national origin, race, color, religion and retaliation.  The harassers were removed from Plaintiff Wahid's work environment, and conditions within the Goodlettsville plant improved until Doug Griffin assumed the Plant Manager position in or around 2016.

34.     Disparate comments were made regarding Plaintiff Wahid's race, national origin, religion and color. For example, Doug Griffin frequently made comments about his work ethic in reference to his nationality and his accent.

35.     Non-Caucasian, foreign-born employees were treated less favorably than Caucasian, American-born employees.

36.     After the appointment of Griffin and continuing until his discharge in or around June 2017, Plaintiff Wahid was prohibited by his Caucasian-American-born, Christian superiors from praying during work hours, despite said prayer being a tenet of his religion.

37.     As a supervisor, Plaintiff Wahid made sure the Muslim employees he supervised could take breaks to pray.

38.     Plaintiff Wahid was subjected to disparaging remarks directed toward Muslims, including the prayer breaks, and was instructed by his Caucasian-American-born, Christian superiors to time the other Muslim employees while on their prayer breaks.

39.     Plaintiff Wahid reported the religious harassment and discrimination, as well as racial, color and national origin discrimination and harassment, to Human Resources Complex Manager Crystal Dyer who took no action to remedy the harassment and discrimination or to prevent any future harassment or discrimination.

40.     After reporting the discrimination, Plaintiff Wahid's work conditions worsened and the discrimination and harassment became more frequent and severe.

41.     Plaintiff Wahid was physically threatened by a team member with a machete on Tyson grounds after having to discipline the team member. When he reported this threat, he was told by Caucasian-American-born employees that he would be "okay" because "he is Moroccan" despite the seriousness of the incident.

42.     American-born employees who were involved in the machete incident were praised and given gifts while Plaintiff Wahid did not receive any assistance with his medical issues arising out of the incident, nor any support or sympathy even though he was the one threatened with a machete.

43.     Plaintiff Wahid was also disciplined when he had to take time off for his son's illness when similarly situated Caucasian-American-born employees were not disciplined under the same or similar circumstances.

Copy

44. Plaintiff Wahid applied for open positions that were less physically demanding and more lucrative shifts but was denied and the positions were awarded to Caucasian, American-born employees.

45. Despite opposing harassment and discrimination and reporting the incident to Human Resources, the conditions persisted and worsened. On or around June 20, 2017, the conditions were so intolerable that no reasonable person would be able to remain, Plaintiff Wahid was forced to resign from his position.

46. Plaintiff submits that he was constructively discharged.

**C. Arnobio Gomez**

47. Plaintiff Gomez was hired by the Defendant in 2002 or 2003.

48. Plaintiff Gomez was originally born in Colombia and is a dark-skinned Hispanic male.

49. At all times relevant, Plaintiff Gomez was over 45 years of age.

50. At all times relevant, Plaintiff Gomez was a Supervisor at the Goodlettsville plant.

51. Since the beginning of Plaintiff Gomez's employment, he performed his job to the best of his ability and consistent with the Defendant's requirements and expectations.

52. Plaintiff Gomez had also filed a Charge of Discrimination in 2011 with the Equal Employment Opportunity Commission, alleging discrimination based upon national origin, race, color, and retaliation. The harassers were removed from Plaintiff Wahid's work environment, and conditions within the Goodlettsville plant improved until Doug Griffin assumed the Plant Manager position in or around 2016.

Copy

53. After the appointment of Griffin and continuing until his discharge, Plaintiff Gomez endured comments regarding his race, color, national origin and age from Caucasian-American-born employees.

54. Plaintiff Gomez applied for open positions that were more lucrative and less demanding positions, but these positions were given to Caucasian, American-born employees instead of him.

55. Additionally, Plaintiff Gomez made a lower salary than similarly situated Caucasian-American employees.

56. Plaintiff Gomez relocated to the Goodlettsville plant from another state and was promised a pay increase that never occurred.

57. Doug Griffin made comments to Plaintiff Gomez regarding his age, calling him "old man."

58. Plaintiff Gomez reported the harassment and discrimination to Human Resources Complex Manager Crystal Dyer who took no action to remedy the harassment and discrimination or to prevent any future harassment or discrimination.

59. After reporting the discrimination and harassment, Plaintiff Gomez was subjected to increased scrutiny along with continued and increased harassment and discrimination.

60. The conditions deteriorated to the point that they were so intolerable that no reasonable person would be able to remain, Plaintiff Gomez was forced to resign from his position on or around May 12, 2017.

61. After giving his notice, Plaintiff Gomez was escorted off the grounds of the Goodlettsville plant on May 15, 2017 and not allowed to complete his notice.

Copy

62.    Plaintiff submits that he was constructively discharged.

**D. Omar Abdulqader**

63.    Plaintiff Abdulqader was hired by the Defendant on or around June 13, 2009.

64.    Plaintiff Abdulqader was born in the Republic of Iraq.

65.    Plaintiff Abdulqader is a practicing Muslim and Arabic male.

66.    At all times relevant, Plaintiff Abdulqader was a Supervisor within the Goodlettsville plant.

67.    Since the beginning of Plaintiff Abdulqader's employment, he performed his job to the best of his ability and consistent with the Defendant's requirements and expectations.

68.    Plaintiff Abdulqader endured humiliating and derogatory remarks from Mr. Griffin about his race, religion, and national origin which were made in front of his peers. Similarly situated Caucasian, American-born employees were not subject to this treatment.

69.    Plaintiff Abdulqader also attempted to move into more lucrative and less demanding positions within the Goodlettsville plant but these positions were given to Caucasian-American-born employees instead.

70.    Mr. Griffin also dumped a trash can on Plaintiff Abdulqader's workspace which was, in addition to being universally unprofessional and disrespectful, particularly offensive to tenets of his religion concerning cleanliness.

71.    Plaintiff Abdulqader reported this discriminatory treatment and harassment to Human Resources Complex Manager Crystal Dyer, and she failed to take

Copy

any action to remedy or to reprimand the Caucasian-American-born employees performing these acts.

72. After reporting this discrimination and harassment, the conditions worsened and the harassment and discrimination increased.

73. Plaintiff Abdulqader had a medical condition which required treatment. He was prescribed restrictions which he presented to Tyson. He requested and was approved for the time off from work under the Family Medical Leave Act.

74. The Defendant repeatedly contacted Plaintiff Abdulqader's physician to truncate his restrictions so he could be returned to work sooner even though his time off was approved.

75. On June 29, 2017, Plaintiff Abdulqader was terminated allegedly due to non-response regarding the end of his leave of absence due to his injury.

76. However, Plaintiff Abdulqader kept the Defendant aware of his medical condition and the time he needed off work.

77. Plaintiff submits that the proffered reason for his termination is merely pre-textual and that the true motive for his termination was illegal and improper.

**E.     Labinot Kolshi**

78. Plaintiff Kolshi was hired by the Defendant on or around January 21, 2003.

79. Plaintiff Kolshi was originally born in the Republic of Albania.

80. Plaintiff Kolshi is a practicing Muslim and Albanian male.

81. At all times relevant, Plaintiff Kolshi was the Operations Manager at the Goodlettsville location.

Copy

82. Since the beginning of Plaintiff Kolshi's employment, he performed his job to the best of his ability and consistent with the Defendant's requirements and expectations.

83. Upon the appointment of Doug Griffin as Plant Manager of the Goodlettsville Plant in or around 2016, Plaintiff Kolshi and other non-Caucasian, foreign-born employees endured undue harassment and disparate comments regarding their race, national origin, and religion.

84. After the appointment of Griffin and continuing until his discharge in May 2017, Plaintiff Kolshi witnessed the non-Caucasian, foreign-born employees on his shift endure increased scrutiny, harassment and discrimination despite meeting all their goals.

85. Plaintiff Kolshi himself endured derogatory comments about his race, national origin, and religion and harassment from Caucasian, American-born employees.

86. Plaintiff Kolshi would often have to shield non-Caucasian, foreign-born employees from unwarranted criticism and harassment from Mr. Griffin.

87. Plaintiff Kolshi witnessed Mr. Griffin state repeatedly that he was trying to force non-Caucasian, foreign-born employees to leave the plant.

88. Mr. Griffin also remarked to Plaintiff Kolshi several times that Plaintiff Kolshi should be "proud" for being Albanian and making the salary he does, which Plaintiff Kolshi explained was offensive but Mr. Griffin expressed no remorse.

89. Plaintiff Kolshi also had to endure derogatory comments regarding Muslim employees.

90. On March 20, 2017, Plaintiff Kolshi was reprimanded for bad quality product produced on a shift under purview of the Assistant Operations Manager, who is



Caucasian and American-born. However, the Caucasian Assistant Operations Manager was not similarly punished.

91.    Plaintiff Kolshi repeatedly reported the harassment and discrimination to Human Resources Complex Manager Crystal Dyer who took no actions to remedy the harassment and discrimination or to prevent any future harassment or discrimination.

92.    After reporting harassment and discrimination, Plaintiff Kolshi was subjected to increased scrutiny, harassment and discrimination. The conditions were so intolerable that no reasonable person would be able to remain, Plaintiff Kolshi was forced to resign from his position on or around May 1, 2017.

93.    Plaintiff Kolshi submits that he was constructively discharged.

**COUNT I**
**RACE AND NATIONAL ORIGIN DISCRIMINATION**
**Relevant to All Plaintiffs**

94.    Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 – 93 above.

95.    At all times pertinent to this action, each Plaintiff was a "person" within the meaning of Tennessee Code Annotated § 4-21-102(14).

96.    At all times pertinent to this action, Defendant was an "employer" within the meaning of Tennessee Code Annotated § 4-21-102(4).

97.    Beginning in or about 2016 and continuing through their individual adverse employment actions to the present time in the case of Plaintiff Benitez, the Plaintiffs were subjected to harassment and discrimination by the Defendant's employees, including but not limited to the Plaintiffs' supervisors and management because of their race and national origin.

Copy

98. The Plaintiffs assert that they were treated poorly and received disparate treatment as compared to Caucasian-American-born employees who were similarly situated. The Plaintiffs received discipline such as verbal warnings, and adverse actions which similarly situated Caucasian workers were not warned or disciplined for committing.

99. Additionally, the Defendant failed to apply policies and quotas consistently between the Plaintiffs and other similarly situated Caucasian, American-born co-workers.

100. The Plaintiffs assert that there is a causal connection between the Defendant's disparate treatment, discrimination, and adverse employment action and the Plaintiffs' race and/or national origin. In addition to unfair and disparate performance expectations, foreign-born, non-Caucasian employees—the Plaintiffs and their co-workers—were denied job opportunities and more desirable shift placements.

101. The Plaintiffs were also subjected to derogatory terms and phrases; for example, the Plaintiffs would be commanded to speak English when communicating with other non-Caucasian, foreign-born employees in their native tongue.

102. The Plaintiffs would aver that the Defendant's reason for the adverse employment actions taken against them were pre-textual and further, the Plaintiffs were constructively discharged, demoted and/or terminated due to their race and/or national origin.

103. By failing to treat the Plaintiffs similarly to their Caucasian-American-born counterparts and by taking adverse employment actions against the Plaintiffs, the Defendant discriminated against the Plaintiffs with respect to their terms, conditions, and

Copy

privileges of employment because of or on the basis of race and/or nation origin, in violation of Tennessee Code Annotated § 4-21-401(1).

## COUNT II
## RETALIATION
### Relevant to all Plaintiffs

104. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 – 103 above.

105. At all times pertinent to this action, each Plaintiff was an "employee" within the meaning of common law, Tennessee Code Annotated § 50-1-304 and the Tennessee Human Rights Act.

106. At all times pertinent to this action, Defendant was an "employer" within the meaning of common law, Tennessee Code Annotated § 50-1-304 and the Tennessee Human Rights Act.

107. Plaintiffs submit that they were was terminated in retaliation for engaging in protected activities. Plaintiffs assert that the Defendant retaliated against them in violation of Tennessee Code Annotated § 50-1-304, and the Tennessee Human Rights Act.

108. Beginning in 2016 and continuing the middle of 2017 and to present day in the case of Plaintiff Benitez, the Plaintiffs were subjected to retaliation in the workplace for reporting harassment and discrimination to a member of management, human resources and/or their superiors.

109. The Plaintiffs reported the harassment and discrimination to Human Resources at varying times during the subsequent several months after Doug Griffin was appointed Plant Manager of the Goodlettsville location. Plaintiff Benitez also reported the



harassment and discrimination to Vice President Ray McGall. Further all Plaintiffs opposed the discriminatory conduct as it occurred and refused to participate.

110. Management and Human Resources with the Defendant failed to take any preventative or corrective action to stop the continued harassment and discrimination, but instead retaliated against Plaintiff Benitez by demoting him on or around June 20, 2017; retaliated against Plaintiff Abdulqader by terminating him on or around June 29, 2017; and retaliated against Plaintiffs Wahid, Gomez and Kolshi by making their work conditions so intolerable that any reasonable person would resign as they did on or June 20, 2017, May 12, 2017 and May 1, 2017 respectively.

111. At all pertinent times, the Defendant violated Tennessee Code Annotated § 50-1-304 and the Tennessee Human Rights Act, as (1) the Plaintiffs were employees of the Defendant; (2) the Plaintiffs reported and refused to remain silent about harassment and discrimination protected under the Tennessee Human Rights Act; (3) the Defendant took adverse employment actions against the Plaintiffs' and (4) the Defendant took adverse employment actions against the Plaintiffs because of the Plaintiffs' refusal to remain silent and for reporting the harassment and discrimination.

112. The Plaintiffs further assert a claim under the Tennessee Public Protection Act claim and submit that (1) an employment at-will relationship existed; (2) the employees or Plaintiffs were discharged, demoted or terminated on varying dates; (3) the reason for the adverse employment actions was that the Plaintiffs attempted to exercise a statutory or constitutional right and regulatory provisions governing discrimination in the workplace; and (4) the sole factor in the Defendant employer's decision to take adverse

Copy

employment actions against Plaintiffs was the Plaintiffs' exercise of protected rights and/or refusal to participate in harassment and discrimination of themselves.

113. The Plaintiffs aver that the supervisors were the purveyors of the aforementioned acts of inappropriate conduct and retaliation and that despite Plaintiffs' formal complaints, the Defendant retaliated against the Plaintiffs for reporting harassment and discrimination.

114. At the Defendant's Goodlettsville location, there was a breach of the Defendant's duty to supervise its employees and agents. Among other employees, the persons who the Defendant hired in supervisory positions participated and condoned discriminatory and retaliatory practices. The Defendant negligently hired and appointed supervisors and managers who created a hostile environment in the Plaintiffs' place of employment.

## COUNT III
## NEGLIGENT HIRING, RETENTION AND SUPERVISION PRACTICES
### Relevant to All Plaintiffs

115. Allegations 1 - 114 are hereby incorporated herewith. In the alternative, the Plaintiffs assert that the Defendant is guilty of negligent hiring and retention practices.

116. At all relevant dates and times as forth herein, the Defendant was vicariously liable for the actions and inappropriate conduct of the Defendant's employees, agents, and representatives because: (a) the Defendant did not exercise reasonable care to promptly correct and prevent the retaliatory behavior; (b) the Defendant's employee's agents and representatives failed to respond properly to reports of discrimination and harassment work; (c) the Defendant failed to promulgate an anti-harassment or retaliation policy with a complaint procedure in place enforced by management; (d) the Defendant



did not properly train the Plaintiffs' supervisors regarding the Defendant's policies towards a workplace free of harassment and retaliation; (e) the Defendant did not have a viable and reasonable procedure and policy in effect to encourage and promote employees to report retaliation and harassment occurring within the Defendant's workplace; (f) the Defendant permitted a workplace permeated with discrimination, harassment and retaliation which has created a hostile environment; and (g) the Defendant had a duty to properly supervise its employees and agents.

117. The Defendant was aware of the prior discrimination and harassment per Plaintiffs Gomez and Wahid's prior EEOC filings. Despite prior knowledge, the Defendant, including Human Resources, failed to investigate or act when Gomez, Wahid and at least three other employees, Plaintiffs Benitez, Abdulqader and Kolshi, reported this recent discriminatory and harassing conduct.

118. Doug Griffin brought Derek Ausbrooks to the Goodlettsville plant to work even though he had prior civil rights violations alleged against him. Doug Griffin even discussed bringing back Bob Beasley, the supervisor who discriminated against Plaintiffs Wahid and Gomez. Griffin often bragged about getting rid of non-Caucasian, foreign-born employees and was openly hostile and impatient toward the employees who did not have English as their primary language.

119. At the Defendant's Goodlettsville, Tennessee location, there was a breach of the Defendant's duty to train, monitor and supervise its employees and agents. Among other employees, the persons who the Defendant hired for Plaintiffs' supervisor and management positions participated in and condoned discriminatory and retaliatory practices. The Defendant negligently hired and appointed supervisors and managers who

Copy

created a hostile environment in the Plaintiffs' place of employment.

120.    The Defendant further failed to supervise their management and non-management staff and employees to prevent, discover or correct retaliatory or discriminatory practices that were taking place.

121.    The Plaintiffs endured harassment, discrimination and retaliation because of the Defendant's negligent hiring and retention practices while employed by Defendant.

122.    There is a proximate causal relationship between the Defendant's failure properly hire, train and supervise its employees and the harassment, discrimination, and retaliation endured by the Plaintiffs.

## COUNT IV
## RELIGIOUS DISCRIMINATION
### Relevant to Plaintiffs Wahid, Abdulqader and Kolshi

123.    Plaintiffs Wahid, Abdulqader, and Kolshi re-allege and incorporate herein the allegations contained in paragraphs 1 – 122 above.

124.    At all times pertinent to this action, each Plaintiff was a "person" within the meaning of Tennessee Code Annotated § 4-21-102(14).

125.    At all times pertinent to this action, Defendant was an "employer" within the meaning of Tennessee Code Annotated § 4-21-102(4).

126.    Beginning in or about 2016 and continuing through their individual adverse employment actions, the Plaintiffs were subjected to harassment and discrimination by the Defendant's employees, including but not limited to the Plaintiffs' supervisors and management on the basis of their religion, Islam.

127.    The Plaintiffs assert that they were treated poorly and received disparate treatment as compared to non-Muslim employees who were similarly situated. The

Plaintiffs received discipline such as verbal warnings, and adverse actions and/or omissions which similarly situated Caucasian workers were not warned or disciplined for committing.

128.    The Plaintiffs were either denied reasonable requests to practice the tenets of their religion and/or ridiculed about the tenets of their religion.

129.    Additionally, the Defendant failed to apply policies consistently between the Plaintiffs and other similarly situated non-Muslim employees.

130.    The Plaintiffs assert that there is a causal connection between the Defendant's disparate treatment, discrimination, and adverse employment action and the Plaintiffs' practice of the Muslim religion.

131.    The Plaintiffs would aver that the Defendant's reason for the adverse employment actions taken against them were pre-textual and further, the Plaintiffs were constructively discharged and/or terminated due to their religion.

132.    Because the Plaintiffs were in supervisory positions, in addition to being Muslim personally, they also supported Muslim employees and were subjected to degrading remarks and ridicule about their faith and their customs.

133.    Doug Griffin frequently complained about Muslim employees and required the Plaintiffs to time prayer breaks which the Plaintiffs considered demeaning and a form of intimidation to discourage employees from taking prayer breaks.

134.    By failing to treat the Plaintiffs similarly to their Caucasian-American-born counterparts and by taking adverse employment actions against the Plaintiffs, the Defendant discriminated against the Plaintiffs with respect to their terms, conditions, and



privileges of employment because of or on the basis of religion, in violation of Tennessee

Code Annotated § 4-21-401(1).

**COUNT V**
**COLOR DISCRIMINATION**
**Relevant to Plaintiffs Gomez and Wahid**

135.    Plaintiffs Wahid and Gomez re-allege and incorporate herein the

allegations contained in paragraphs 1 – 134 above.

136.    At all times pertinent to this action, each Plaintiff was a "person" within

the meaning of Tennessee Code Annotated § 4-21-102(14).

137.    At all times pertinent to this action, Defendant was an "employer" within

the meaning of Tennessee Code Annotated § 4-21-102(4).

138.    Beginning in or about 2016 and continuing through their individual

adverse employment actions to the present time in the case of Plaintiff Benitez, the

Plaintiffs were subjected to harassment and discrimination by the Defendant's

employees, including but not limited to the Plaintiffs' supervisors and management

because of their color.

139.    The Plaintiffs assert that they were treated poorly and received disparate

treatment as compared to Caucasian, American-born employees and additionally non-

Caucasian, foreign-born employees with lighter skin color who were similarly situated.

The Plaintiffs received discipline such as verbal warnings, and adverse actions and/or

omissions which similarly situated lighter-skinned workers were not warned or

disciplined for committing.

140.    Additionally, the Defendant failed to apply policies consistently between

the Plaintiffs and other similarly situated lighter skinned co-workers.

Copy

141.     The Plaintiffs assert that there is a causal connection between the Defendant's disparate treatment, discrimination, and adverse employment action and the Plaintiffs' skin color.

142.     The Plaintiffs would aver that the Defendant's reason for the adverse employment actions taken against them were pre-textual and further, the Plaintiffs were constructively discharged, demoted or terminated due to the color of their skin.

143.     By failing to treat the Plaintiffs similarly to their Caucasian, American-born and lighter-skinned counterparts and by taking adverse employment actions against the Plaintiffs, the Defendant discriminated against the Plaintiffs with respect to their terms, conditions, and privileges of employment because of or on the basis of the color of their skin, in violation of Tennessee Code Annotated § 4-21-401(1).

## COUNT VI
## AGE DISCRIMINATION
### Relevant to Plaintiff Gomez

144.     Plaintiff Gomez re-alleges and incorporates herein the allegations contained in paragraphs 1 – 143 above.

145.     At all times pertinent to this action, the Plaintiff was a "person" within the meaning of Tennessee Code Annotated § 4-21-102(14).

146.     At all times pertinent to this action, Defendant was an "employer" within the meaning of Tennessee Code Annotated § 4-21-102(4).

147.     Beginning in or about 2016 and continuing through his discharge on or around May 12, 2017, the Plaintiff was subjected to harassment and discrimination by the Defendant's employees, including but not limited to the Plaintiff's supervisors and management.

Copy

148. The Plaintiff asserts that he was treated poorly and received disparate treatment as compared to employees younger than 40 years old who were similarly situated. The Plaintiff received discipline such as verbal warnings, and adverse actions and/or omissions which similarly situated younger workers were not warned or disciplined for committing.

149. Additionally, the Defendant failed to apply policies consistently between the Plaintiff and other similarly situated younger co-workers.

150. The Plaintiffs assert that there is a causal connection between the Defendant's disparate treatment, discrimination, and adverse employment action and the Plaintiff's age.

151. The Plaintiff would aver that the Defendant's reason for the adverse employment actions taken against him were pre-textual and further, the Plaintiff was constructively discharged due to his age.

152. The Plaintiff's superior, Doug Griffin, repeatedly made derogatory comments about his age. Additionally, the Plaintiff was replaced by a younger worker.

153. By failing to treat the Plaintiff similarly to his younger counterparts and by taking an adverse employment action against the Plaintiff, the Defendant discriminated against the Plaintiff with respect to his terms, conditions, and privileges of employment because of or on the basis of his age, in violation of Tennessee Code Annotated § 4-21-407(1).

## COUNT VI
## DISABILITY DISCRIMINATION
### Relevant to Plaintiff Abdulqader

154. Plaintiff Abdulqader re-alleges and incorporates herein the allegations contained in paragraphs 1 – 153 above.

155. At all times pertinent to this action, Plaintiff Abdulqader was an employee of the Defendant with a "disability" within the meaning of the Tennessee Disability Act, Tennessee Code Annotated § 8-50-103.

156. At all times pertinent to this action, the Defendant was an "employer" within the meaning of the Tennessee Disability Act, Tennessee Code Annotated § 8-50-103.

157. Plaintiff Abdulqader asserts from May 2017 to June 29, 2017, the Plaintiff was operating under a physical impairment that substantially limited one or more major life activities, which was apparent to and perceived by the Defendant.

158. Additionally, Plaintiff Abdulqader informed the Defendant of his limitations and disabilities.

159. At the time of his termination, the Plaintiff suffered from a shoulder injury and an injury to his feet.

160. At the time of his termination, Plaintiff was limited in lifting and long periods of walking and standing.

161. Plaintiff was placed on physical work restrictions while undergoing treatment for his health issues. Prior to being placed on restrictions, Plaintiff Abdulqader was able to perform all essential functions of his job.

162. Plaintiff Abdulqader was placed upon restrictions and shared these restrictions with the Defendant.

163. The Defendant began harassing the Plaintiff's physicians about whether the Plaintiff could return to work and the restrictions could be lifted.

164. Additionally, the Defendant perceived or regarded the Plaintiff's injuries, medical condition and the restrictions placed on the Plaintiff as a disability, consistent with the Tennessee Disability Act, Tennessee Code Annotated § 8-50-103.

165. During this applicable time period, the Plaintiff 1) suffered from one or more physical impairment that substantially limited one or more of the Plaintiff's major life activities; 2) the Plaintiff was qualified and able to perform the required job despite disability; and 3) the Defendant knowingly discriminated against the Plaintiff because of his disability.

166. The Defendant's termination of Plaintiff Abdulqader constituted an adverse employment action.

167. Plaintiff Abdulqader avers the Defendant's reason for termination was illegal.

168. The Defendant's termination of Plaintiff Abdulqader constituted a violation of the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103 in conjunction with the Tennessee Human Rights Act.

169. The Defendant discriminated against Plaintiff Abdulqader and treated him poorly from the time the Defendants knew of his disabling injuries until the date of his discharge.



170. At all relevant dates and times as forth herein, the Defendant is vicariously liable for the actions and inappropriate conduct of its employees, agents and/or representatives because: (a) the Defendant did not exercise reasonable care to promptly correct and prevent the handicap and disability discriminating behavior; (b) the Defendant did not properly supervise and train the Plaintiff's supervisors regarding appropriate behavior towards employees with injuries or disabilities; (c) the Defendant did not properly train the Plaintiff's supervisors regarding the Defendants' policies towards a workplace free of handicap and disability discrimination; (d) the Defendant did not have a viable and reasonable procedure and policy in effect to encourage and promote employees to report handicap and disability discrimination occurring within the Defendant's workplace; and (e) the Defendant did not have a viable and reasonable procedure and policy in effect to provide reasonable accommodation to its employees with disabilities.

171. Plaintiff Abdulqader's managers and supervisors discriminated against Plaintiff Abdulqader as a result of his physical disability and/or their perception of his physical disability by disciplining him and terminating the Plaintiff, even though he was performing all his job duties. They also made frequent calls to the Plaintiff's physician and asked the physician to change the restrictions. The management teams' actions show that the Defendant had not properly trained the managers and supervisors or provided proper instruction regarding the handling and processing of employees with disabilities, to prevent discrimination against the Plaintiff for his disability and therefore violated the Tennessee Disability Act.

172. At said relevant dates and times as set forth herein:

Copy

a. Plaintiff Abdulqader was a qualified individual with a disability that substantially limited a major life activity and/or the employer treated and perceived the Plaintiff as if the Plaintiff's impairment substantially limited a major life activity;

b. Plaintiff Abdulqader was able to perform the essential functions of his job with or without reasonable accommodation; and

c. Plaintiff Abdulqader suffered a tangible employment action in being discharged or terminated by the employer as a result of his disability.

## COUNT VII
## FMLA INTERFERENCE AND RETALIATION
### Relevant to Plaintiff Abdulqader

173. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 – 172 above.

174. At all times pertinent to this action, Plaintiff Abdulqader was an "eligible employee" within the meaning of the Family and Medical Leave Act.

175. At all times pertinent to this action, the Defendant was a "covered employer" within the meaning of the Family and Medical Leave Act.

176. At all times pertinent to this action, Plaintiff Abdulqader was a full-time employee of the Defendant for over one year, worked over 1,250 hours and the Defendant employed over fifty employees.

177. During May 2017 and continuing until June 29, 2017, Plaintiff Abdulqader suffered from a serious medical condition or illness as defined by the Family and Medical Leave Act.

178. The Defendant recognized that Plaintiff Abdulqader was entitled to leave pursuant to the Family and Medical Leave Act, hereinafter "FMLA."

Copy

179. The Defendant recognized FMLA's allowance for a twelve week leave of absence for a serious medical condition or illness such as Plaintiff Abdulqader's medical condition.

180. The Defendant spoke with Plaintiff Abdulqader and was aware that he suffered a serious medical condition which qualified under the FMLA.

181. Plaintiff Abdulqader applied for time off under FMLA and the time off was granted.

182. However, Plaintiff Abdulqader's physician received multiple phone calls from the Defendant to have Plaintiff Abdulqader's restrictions lifted so he could return to work before he was ready.

183. Plaintiff Abdulqader was terminated by the Defendant on June 29, 2017 for purported non-response regarding the end of his leave.

184. Plaintiff Abdulqader asserts this reason was pretextual because he and his physicians kept the Defendant aware of his condition and treatment during the duration of his leave.

185. The Defendant has violated the FMLA by interfering with the Plaintiff's protected leave and/or retaliating against him when he attempted to exercise leave. At all applicable times: (a) the Plaintiff availed himself of his rights under the FMLA; (b) the Plaintiff was adversely affected by an employment decision; (c) a causal connection exists between the Plaintiff's request and taking of leave under FMLA benefits and his termination.

186.    Plaintiff Abdulqader's use of FMLA leave was a motivating factor, and based, in part, on the timing of Defendant's adverse actions, an immediate motivating factor, in the Defendant's decision to ultimately terminate Plaintiff.

## APPLICABLE TO ALL COUNTS

1.    Plaintiffs have suffered direct pecuniary losses as a result of the Defendant's violations of the Tennessee Human Rights Act, Tennessee Code Annotated § 50-1-304, the Tennessee Disability Act, the Family and Medical Leave Act, and negligent practices.

2.    Plaintiffs will continue to suffer direct pecuniary losses as a result of the Defendant's culpable acts of omissions as set forth herein, the Defendant's violation of the Tennessee Human Rights Act, the Family and Medical Leave Act, the Tennessee Disability Act, TCA §50-1-304, and negligent practices.

3.    Plaintiffs are entitled to compensation for incidental damages, attorney's fees, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other non-pecuniary loses.

4.    Plaintiffs further submit that the Defendant has acted: (a) intentionally, and/or (b) maliciously, and/or (c) recklessly and that the Plaintiffs are entitled to punitive damages.

5.    As a result of the harassment, retaliation, and discrimination, the Plaintiffs have suffered embarrassment and humiliation, emotional distress, pain and suffering, incidental expenses, lost wages and loss earning capacity.

Copy

6.     As a result of the Defendant's culpable acts or omissions set forth herein, the Plaintiffs were improperly discriminated against and harassed by the Defendant and are entitled to compensation for compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering, other incidental damages non-pecuniary loses, and for punitive damages. Plaintiffs submit they are entitled to a workplace free of harassment, discrimination, and retaliation.

**WHEREFORE PLAINITFFS PRAY:**

a.     the Plaintiffs be awarded compensatory damages in an amount to be determined by the Trier of Fact;

b.     the Plaintiffs be awarded punitive damages in an amount to be determined by the Trier of Fact;

c.     that the Court award the Plaintiffs' attorney's fees and costs incurred in prosecuting this action and such discretionary costs as provided under Tennessee law;

d.     that the Court award the Plaintiffs such other, further, general and different relief to which he may be entitled;

e.     that the Court issue an injunction preventing further harassment, discrimination and retaliation, against Plaintiff Benitez temporary and permanent;

f.     that the costs of this action be taxed against the Defendant for which execution may issue; and

g.     for general relief.

Copy

Respectfully submitted,

Nina H. Parsley, BPR # 023818
Michael D. Ponce & Associates, PLLC
Attorneys for Plaintiff
1000 Jackson Road, Suite 225
Goodlettsville, TN 37072
Telephone: (615) 851-1776
nina@poncelaw.com